

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**09/04/2012**

| | | |
|---|---|---|
| IN RE: | § | **Case No. 11-35860** |
| **ORIGINAL DESIGNER HOMES, INC.; fka** | § | **Chapter 11** |
| **DESIGNER HOMES, INC.,** | § | |
| Debtor(s). | § | **Judge Isgur** |

### MEMORANDUM OPINION

The Court denies Margaret McClure's application for compensation.  Ms. McClure was the counsel for the Debtor, Original Designer Homes, Inc., when this bankruptcy case was filed.  After filing a plan and a disclosure statement that was not approved, the Debtor hired new counsel.  The Debtor voluntarily sought dismissal when it discovered that the estate's purported assets were actually owned by another entity.

In reviewing an application for compensation, the Court is required to determine whether the professional's services provided any tangible benefit to the estate.  The Court concludes that Ms. McClure's services did not provide any identifiable, tangible, and material benefit to the estate and denies the application for compensation in full.  The Court also concludes that Ms. McClure's violation of her duty of candor to the Court in failing to disclose cash assets of the Debtor would, even if the application were not denied in full, warrant a significant reduction of fees.

### Background

Original Designer Homes filed a bankruptcy case without having any significant assets.  The Debtor's purported assets had belonged to a defunct corporation called Designer Homes.  The Debtor's President, Tracey Freezia, advised Ms. McClure before the bankruptcy filing that the Debtor's assets were subject to title problems.  ECF No. 89, at 35, 36.

This bankruptcy case was filed on July 5, 2011.  The Court approved the Debtor's application to employ Ms. McClure on August 4, 2011.  ECF No. 22.

Also on July 5, 2011, real property that purportedly belonged to the Debtor was foreclosed.

The Debtor sought to employ Dennis Dylewski as special counsel to represent the Debtor in reviewing and researching potential claims against lenders because of the July 2011 foreclosure and an earlier foreclosure.   ECF No. 27.   The Court approved the Debtor's application to employ Dylewski on October 7, 2011.  ECF No. 28.

By January 10, 2012, the Debtor still had not filed a plan and disclosure statement.  The United States Trustee filed a motion to dismiss or convert the case, alleging failure to file timely, complete, and accurate small business operating reports; failure to file a disclosure statement and plan within the exclusivity period; and inability to propose a confirmable plan of reorganization. ECF No. 32.

The Debtor filed a plan and disclosure statement on February 12, 2012.  ECF Nos. 43 & 44. The disclosure statement did not discuss the title problems with the Debtor's purported properties. ECF No. 89, at 56.  At a hearing on February 14, 2012, the Court denied approval of the disclosure statement.  A hearing on a to-be-redrafted disclosure statement, along with the United State Trustee's motion to dismiss, was set for March 23, 2012.

Before a new disclosure statement was filed, the Debtor filed a motion to substitute counsel on March 2, 2012.  ECF No. 50.  The Debtor sought to hire Wist, Holland & Kehlhof.

On March 14, 2012, acting through new counsel, the Debtor filed a motion to dismiss or convert the case.  ECF No. 51.  The Debtor had discovered that there was no evidence the real estate scheduled on Schedule A was ever conveyed to the Debtor.  Because the Debtor had no real property, the Debtor had no ability to reorganize.  ECF No. 51, at 5.  On March 23, 2012, the Court granted the Debtor's motions to substitute counsel and to dismiss the case.  ECF Nos. 57 & 58.

Ms. McClure filed an application for compensation on March 26, 2012, seeking $18,420.50 in fees and $1,310.69 in expenses.  ECF No. 62.

The Debtor filed an objection to Ms. McClure's application for compensation, arguing that

the application should be denied because Ms. McClure had failed to properly and fully examine the title issue, which ultimately made the case pointless. ECF No. 70, at 4. The Debtor alleged that Ms. McClure steered the Debtor toward hiring Mr. Dylewski, who was paid a $10,000.00 retainer and allegedly produced no verbal or written work product and no opinion as to whether the title was good.[1] The Debtor alleged that the plan and disclosure statement were inadequate and incorporated unedited, confidential notes from Ms. Freezia. ECF No. 70, at 6. The plan drafted by Ms. McClure was doomed to fail, Debtor asserted, because it depended on selling real property that did not actually belong to the Debtor. ECF No. 70, at 7.

Wist Holland filed an application for compensation on April 2, 2012. ECF No. 65.

The Court held a hearing on both applications on June 1, 2012. The Court approved Wist Holland's application but requested that the parties file, by June 22, 2012, additional documentation as to Ms. McClure's application.

Ms. McClure filed an affidavit regarding her email transmissions to Tracey Freezia, the Debtor's President, on June 8, 2012. ECF No. 92. Ms. Freezia filed a response on June 15, 2012. ECF No. 94.

## Analysis

Under *Andrews & Kurth, L.L.P. v. Family Snacks, Inc. (In re Pro-Snax Distributors, Inc.)*, 157 F.3d 414, 426 (5th Cir. 1998), this Court may not approve professional fees for services unless the services "resulted in an identifiable, tangible, and material benefit to the bankruptcy estate." It remains unclear whether these benefits should be viewed prospectively or retrospectively. This Court has previously held that a hybrid approach to *Pro Snax* should be applied. "After considering the case-law, the Court determines that the hybrid approach—which considers prospective and retrospective viewpoints—is the best possible inquiry given the language of § 330(a)(3)(C) and the

---

[1] The Debtor has filed a motion to show cause why Mr. Dylewski should not be compelled to disgorge fees. ECF No. 96. Hearing is scheduled for October 5, 2012.

Pro–Snax decision." *In re Cyrus II Partnership,* 2009 WL 2855725 (Bankr. S.D. Tex. 2009). Whether applying a prospective, retrospective or hybrid approach, Ms. McClure's services did not result in and were not reasonably calculated to result in any benefit to the bankruptcy estate.

### 1.  No Identifiable, Tangible, and Material Benefit to the Estate

The Original Designer Homes bankruptcy case ended in dismissal, and Ms. McClure's services provided no tangible benefit for the estate.

Original Designer Homes was incorporated several years before the bankruptcy case was filed.  ECF No. 89, at 8.  At the time of the incorporation, Ms. Freezia believed that she was reviving the charter of a corporation called Designer Homes, Inc., whose charter had lapsed in 1983.  ECF No. 89, at 8, 39.  Ms. Freezia advised Ms. McClure that there were potential title issues with the Debtor's property.  ECF No. 89, at 13-14.

The Debtor chose to file for bankruptcy in order to hold off lawsuits and potentially to set aside a foreclosure that occurred on April 5, 2011.  ECF No. 89, at 33-34.

The plan and disclosure statement were filed on February 12, 2012, outside of the 180-day exclusivity period for filing a plan and disclosure statement in a small business case.   After the filing of the plan and disclosure statement, the Debtor discovered that the real property it had listed on its Schedule A had never been transferred to the Debtor.  ECF No. 89, at 18.  The Debtor therefore lacked any assets with which to reorganize.

Ms. Freezia testified at the June 6, 2012 hearing that the Debtor had not obtained any benefit as a result of the bankruptcy.  She stated,

> I have no protection against my Creditors.  My bills have increased. For instance, property taxes, you have to either pay them which I have limited income because of the bankruptcy.  Most of the customers were on that side.  My income dropped 73 percent, and you're supposed to . . . .  pay 30 percent down.  Well, at the beginning my property taxes were $72,000.  Now they're over a hundred thousand. . . . [N]ew property taxes added to that and I wasn't allowed to pay them during the bankruptcy.

ECF No. 89, at 40.   Ms. Freezia further testified as to her dissatisfaction with Ms. McClure's management of the case.   ECF No. 89, at 45-46.

Ms. McClure asserted at the hearing that the benefit to the Debtor had been that she "had held the creditors at bay from July – June 30th, 2011 until March of this year, until I was substituted out." ECF No. 89, at 19-20.   Although there was a foreclosure sale of property purportedly belonging to the Debtor, Ms. McClure testified, "That property was not in our name.   We hoped to have been able to get it back.   That's why special counsel was hired."   ECF No. 89, at 20.

*Pro-Snax* requires that the benefit of services to the estate be actual and tangible.   It is not enough if the professional providing the services believed, at the time, that the estate would benefit. Ms. McClure had been told of the title problems, but proceeded without giving any meaningful thought to how to address the title issues.   There was neither prospective nor retrospective benefit to the estate.

Had Ms. McClure researched the title issues after being alerted to them by Ms. Freezia, she would have discovered that the Debtor had no significant assets and could not feasibly reorganize.   It was not reasonable to believe at the time the services were provided that they would benefit the estate.   At the time the plan was filed, Ms. McClure should have been aware that the Debtor had no assets and could not reorganize.

Ms. McClure's services ultimately provided no benefit to the Debtor.   The Debtor spent months pursuing a reorganization that could not work and incurring United States Trustee fees. Allegedly holding the creditors at bay was not an identifiable or tangible benefit to the estate; if that was the only meaningful purpose of the case, it would have been undertaken in bad faith.   *Little Creek Dev. Co. v. Commonwealth Mortgage Corp.* ( *In re Little Creek Dev. Co.*), 779 F.2d 1068 (5th Cir.1986).   The purported property of the Debtor did not actually belong to the Debtor, so any foreclosures of the property did not benefit the Debtor.   Because the Debtor did not benefit from the

bankruptcy filing, Ms. McClure's services produced no identifiable, tangible, and material benefit to the estate. The Court therefore denies Ms. McClure's application for compensation in full.

### 2. Alleged Ethical Breaches

The Court also considers whether Ms. McClure's actions in the case, independently of the lack of benefit to the estate, warrant a denial or reduction of fees. "Violations of professional ethics and/or breaches of fiduciary duties permit a reduction, denial or forfeiture of compensation or other sanctions." *In re DiLieto*, 468 B.R. 510, 540 (Bankr. D. Conn. 2012). The extent to which fees are denied for an ethical violation is based on the seriousness of the violation. *See In re Sauer*, 222 B.R. 604, 610 (BAP 8th Cir. 1998) ("While [counsel's] behavior was admittedly unwise, even foolhardy, it was not so degenerate as to warrant the total disgorgement of fees.").

The Court addresses two problems. First, Ms. Freezia alleges that Ms. McClure included Ms. Freezia's personal information in the Debtor's disclosure statement and that Ms. Freezia did not have an opportunity to review the disclosure statement. Ms. Freezia's affidavit states that Ms. McClure did not have her review the plan or disclosure statement and did not meet with her before the disclosure statement hearing or talk to her to explain how the hearing would proceed. ECF No. 94, at 3.

Second, Ms. McClure failed to disclose assets of the Debtor. Ms. Freezia testified at the hearing that after the IRS seized her personal tax refund, she called Ms. McClure and told her that she was taking her money out of the bank and putting it in a safe. ECF No. 89, at 52. Ms. Freezia testified that Ms. McClure told her a lot of her clients "[did] that because the IRS cannot be trusted." ECF No. 89, at 52. Ms. McClure denied telling any client not to put all funds in a debtor-in-possession bank account and testified that she "found out after the fact that Ms. Freezia had put $20,000 in a safe for Original Designer Homes and she it explained it to [her] after the fact after the IRS went after her on the trust fund penalty for the payroll and taxes." ECF No. 89, at 54.

Accepting Ms. McClure's version of events, Ms. McClure learned of the $20,000 before she filed the plan and disclosure statement, but the plan and disclosure statement did not include any information about the cash.  Ms. McClure stated that the cash "was put back in the bank" and therefore it did not need to be described in the disclosure statement.  ECF No. 56.  The liquidation analysis in the disclosure statement showed only $2,200 in cash.  ECF No. 89, at 56-57.  Ms. McClure testified that she "always put[s] petition date values" in disclosure statements.  ECF No. 89, at 57.

The Court does not conclude that Ms. McClure's actions with respect to the disclosure of Ms. Freezia's personal information in the disclosure statement warrant a reduction in fees.  Including Ms. Freezia's personal information in the disclosure statement may have been careless, but it was not a serious violation of professional ethics.  The Court finds that Ms. McClure did not fail to send the plan and disclosure statement to Ms. Freezia.  Ms. Freezia admitted that Ms. McClure's paralegal emailed a copy of the plan and disclosure statement, but stated that she did not receive the copy because the email went to her spam file, "and, as a result [she] did not realize they had been sent to [her.]  Since [she] was not expecting them, [she] did not know to look for them."  ECF No. 94, at 1.

The failure to disclose the assets is a much more serious violation.  The Court depends upon the candor of the parties and their counsel.  Ms. McClure's explanation that the cash had already been put back into the bank accounts is inadequate.  Ms. McClure was aware of the cash before she drafted the plan and disclosure statement.  She was not justified in using "petition date values" for the amount of available cash.  The Debtor actually had more than ten times the amount of cash disclosed in the disclosure statement.  This is a serious omission.  Even if the Court did not deny Ms. McClure's application for lack of tangible benefit to the estate, the failure to disclose the cash would warrant a significant reduction of fees.

7 / 8

**Conclusion**

The Court denies Ms. McClure's application for compensation in full.

SIGNED **August 31, 2012.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE